22-6247; 23-6289

*Wassily v. Bondi; Velasquez Arreaga v. Bondi*

# In the
# United States Court of Appeals
## for the Second Circuit

_____

August Term 2023

Argued: May 22, 2024

Decided: August 7, 2025

_____

Docket No. 22-6247

TAMER S. WASSILY,

*Petitioner,*

v.

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

_____

Docket No. 23-6289

BYRON E. VELASQUEZ ARREAGA,

*Petitioner,*

v.

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

_____

Before:                    WESLEY, PARK, and ROBINSON, *Circuit Judges*.

————————————

These petitions for review, argued in tandem, ask whether noncitizens seeking adjustment to lawful permanent resident status under 8 U.S.C. § 1159(b) must maintain their current asylum status or whether noncitizens may adjust even if their asylum status has been terminated. More specifically, they ask whether a noncitizen seeking adjustment under 8 U.S.C. § 1159(b) must currently be "granted asylum" to adjust to lawful permanent resident status, or whether it is enough that a noncitizen was "granted asylum" at some point in the past, notwithstanding subsequent termination of that grant of asylum. Adopting the former reading, the Board of Immigration Appeals concluded that petitioners Tamer Wassily and Byron Velasquez Arreaga could not adjust to lawful permanent resident status because their asylum status had been terminated. We agree that the plain text of 8 U.S.C. § 1159(b) allows only noncitizens with current asylum status to adjust to lawful permanent resident status and therefore **DENY** the petitions for review.

Judge Robinson dissents in a separate opinion.

————————————

In Docket No. 22-6247:

FOR PETITIONER:              JORDAN R. GOLDBERG, Latham & Watkins LLP, Washington, D.C. (Kerry W. Bretz, Bretz & Coven, LLP, New York, NY, *on the brief*).

FOR RESPONDENT:              JESSICA E. BURNS, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice (Brian Boynton, Principal Deputy Assistant Attorney General, Erica B. Miles, Assistant Director, Duncan T. Fulton, Trial Attorney, *on the brief*), *for* Pamela Bondi,

2

United States Attorney General, Washington, D.C.

In Docket No. 23-6289:

FOR PETITIONER:                    JORDAN R. GOLDBERG, Latham & Watkins LLP, Washington, D.C. (Aaron J. Aisen, Erie County Bar Association, Volunteer Lawyers Project, Inc., Batavia, NY; Melissa Arbus Sherry, Latham & Watkins LLP, Washington, D.C., *on the brief*).

FOR RESPONDENT:                    JESSICA E. BURNS, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice (Brian Boynton, Principal Deputy Assistant Attorney General, Keith I. McManus, Assistant Director, *on the brief*), *for* Pamela Bondi, United States Attorney General, Washington, D.C.

————————————

WESLEY, *Circuit Judge*:

A noncitizen claiming persecution in his or her country of nationality may seek asylum in the United States, either by affirmatively applying for asylum or by raising a claim for asylum in removal proceedings. If granted asylum, a noncitizen is protected from removal and authorized to work in the United States and to travel abroad. *See* 8 U.S.C. § 1158(c)(1). The spouse or children of an

3

applicant for asylum may also be granted asylum status and accompany or follow to join the original applicant in the United States. *See id.* § 1158(b)(3).

Beyond these benefits, a grant of asylum also opens a path to citizenship. Under 8 U.S.C. § 1159(b), a noncitizen who "has been physically present in the United States for at least one year after being granted asylum" may apply for lawful permanent resident status. *Id.* § 1159(b). Assuming other conditions are met, 8 U.S.C. § 1159(b) provides that the Secretary of Homeland Security or the Attorney General "may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum." *Id.* Once granted lawful permanent resident status, a noncitizen may ultimately apply for citizenship through naturalization. *See generally id.* § 1427.

These petitions for review, argued in tandem, ask whether noncitizens seeking adjustment to lawful permanent resident status under 8 U.S.C. § 1159(b) must maintain their current asylum status or whether noncitizens may adjust even if their asylum status has been terminated. More specifically, they ask whether a noncitizen seeking adjustment under 8 U.S.C. § 1159(b) must currently be "granted asylum" to adjust to lawful permanent resident status, or whether it is enough that

a noncitizen was "granted asylum" at some point in the past, notwithstanding

subsequent termination of that grant of asylum.  Adopting the former reading, the

Board of Immigration Appeals ("BIA") concluded that petitioners Tamer Wassily

and Byron Velasquez Arreaga could not adjust to lawful permanent resident status

because their asylum status had been terminated.  We agree that the plain text of

8 U.S.C. § 1159(b) allows only noncitizens with current asylum status to adjust to

lawful permanent resident status and therefore deny the petitions for review.

## BACKGROUND

### I.    Tamer Wassily

Tamer Wassily, a native and citizen of Egypt, entered the United States on

a visitor visa in 1993.  He overstayed his visa and was placed in removal

proceedings.  Wassily then applied for asylum, claiming persecution in Egypt for

his Coptic Christian beliefs; Wassily was granted asylum in 2000.

In 2004, Wassily was convicted of third-degree stalking, in violation of New

York Penal Law § 120.50, and child endangerment, in violation of New York Penal

Law § 260.10.  Because of those convictions, the Department of Homeland Security

("DHS") moved to reopen Wassily's removal proceedings in order to terminate

his asylum status. The Immigration Judge ("IJ") granted the motion and terminated Wassily's asylum status, finding that Wassily's conviction for third-degree stalking was a "particularly serious crime."[1] The IJ subsequently denied Wassily's renewed application for asylum, as well as his application for withholding of removal and relief under the Convention Against Torture ("CAT"); the IJ ordered Wassily removed to Egypt.

Wassily appealed to the BIA; he also moved to remand, arguing that his counsel before the IJ was ineffective by failing to request Wassily's adjustment to lawful permanent resident status prior to the termination of his asylum status.[2] After the BIA rejected his ineffective assistance of counsel claim and dismissed his appeal, Wassily filed a petition for review in this Court. We granted Wassily's petition for review, reasoning that "remand [was] required for the BIA to

---

[1] Under 8 U.S.C. § 1158(c)(2), "[a]sylum granted under [8 U.S.C. § 1158(b)] . . . may be terminated if the Attorney General determines that" a noncitizen, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(c)(2)(B), 1158(b)(2)(A)(ii).

[2] More specifically, Wassily argued that his prior attorney's "failure to request that Mr. Wassily be allowed to pursue adjustment of status prior to his asylee status being terminated" was an "egregious" error. *Wassily v. Bondi*, No. 22-6247, Certified Admin. R. at 778.

6

reconsider whether the IJ was entitled to rely on the [presentence report]" in concluding that Wassily had been convicted of a particularly serious crime. *Wassily v. Holder*, 523 F. App'x 783, 785 (2d Cir. 2013) (summary order).[3] We did not find any error in the agency's denial of deferral of removal under the CAT. *Id.* at 785–86.

On remand, the IJ again determined that Wassily's third-degree stalking conviction was a particularly serious crime, therefore terminating Wassily's asylum status and rendering him ineligible for withholding of removal. Despite terminating Wassily's asylum status, the IJ found that Wassily was eligible to adjust to lawful permanent resident status under 8 U.S.C. § 1159(b) because "[t]he [Immigration and Nationality Act] does not contain an explicit requirement that [an] applicant for adjustment of status under [8 U.S.C. § 1159(b)] have continued asylee status to be eligible for adjustment." *Wassily v. Bondi*, No. 22-6247, Certified Admin. R. at 99. The IJ then granted Wassily's application for adjustment.

---

[3] We also concluded that the BIA abused its discretion by denying Wassily's motion to remand without adequate explanation. *See Wassily*, 523 F. App'x at 786.

DHS appealed that decision to the BIA. While that appeal was pending, the BIA decided *Matter of T-C-A-*, 28 I. & N. Dec. 472 (B.I.A. 2022). In *Matter of T-C-A-*, the BIA concluded that only a noncitizen with current asylum status can adjust to lawful permanent resident status under 8 U.S.C. § 1159(b). *See* 28 I. & N. Dec. at 479. In other words, the BIA held that "an applicant for adjustment of status under" 8 U.S.C. § 1159(b) must "possess asylee status at the time of adjustment and thus an applicant whose asylee status has been terminated cannot adjust to lawful permanent resident status under [that] provision." *Id.* On petition for review of that decision, the Fourth Circuit agreed. *See Cela v. Garland*, 75 F.4th 355, 361–65 (4th Cir. 2023).

The BIA looked to *Matter of T-C-A-* and concluded that Wassily was ineligible to adjust to lawful permanent resident status because his asylum status had been terminated. Finding "no other controlling issues" to address, the BIA sustained DHS's appeal and ordered Wassily removed to Egypt.[4] *Wassily v. Bondi*, No. 22-6247, Certified Admin. R. at 4–5.

---

[4] In addition to challenging the agency's reading of 8 U.S.C. § 1159(b), Wassily also asks that we review the agency's determination that his third-degree stalking conviction was a particularly serious crime. As the Government argues, however, Wassily did not appeal the IJ's decision on that issue or argue it to the BIA; the BIA found that this argument had

8

## II.    Byron Velasquez Arreaga

Byron Velasquez Arreaga, a native and citizen of Guatemala, entered the United States in 1995.  The following year, he was granted asylum.

Velasquez Arreaga then was convicted of multiple criminal offenses, including, as relevant here, a 2015 conviction for driving while intoxicated, *see* N.Y. Veh. & Traf. Law § 1192(2) & (3), and a 2018 conviction for aggravated driving while intoxicated, *see id.* § 1192(2-a)(a).[5]   In February 2019, the United States Citizenship and Immigration Services ("USCIS") notified Velasquez Arreaga that it intended to terminate his asylum status because the 2018 conviction was a particularly serious crime.  DHS then commenced removal proceedings, charging that Velasquez Arreaga was removable as a nonimmigrant who had remained in the United States for longer than permitted.  *See* 8 U.S.C. § 1227(a)(1)(B).  Velasquez

---

been waived.  Wassily's challenge to the particularly serious crime determination is not exhausted and not before us.  *See Ud Din v. Garland*, 72 F.4th 411, 419–20 (2d Cir. 2023) ("[W]e have generally treated [8 U.S.C.] § 1252(d)(1)'s issue exhaustion requirement as mandatory." (internal quotation marks and citation omitted)).

[5] Velasquez Arreaga's 2018 conviction for aggravated driving while intoxicated required proof that Velasquez Arreaga operated a vehicle with a blood alcohol level of .18% or higher and had two prior convictions for driving while intoxicated within the last ten years.  *See* N.Y. Veh. & Traf. Law § 1192(2-a)(a); *Velasquez Arreaga v. Bondi*, No. 23-6289, Certified Admin. R. at 18.

Arreaga contested that charge, and DHS then lodged a superseding charge, contending that Velasquez Arreaga was removable because he did not possess a valid entry document at the time of application for admission. *See id.* § 1182(a)(7)(A)(i)(I).

The IJ concluded that Velasquez Arreaga's 2015 and 2018 convictions were particularly serious crimes, both individually and together, and terminated his asylum status. Velasquez Arreaga subsequently sought to adjust to lawful permanent resident status under 8 U.S.C. § 1159(b). The IJ, however, granted DHS's motion to pretermit Velasquez Arreaga's application, finding that he was ineligible to adjust because his asylum status had been terminated—that is, reaching the opposite reading of 8 U.S.C. § 1159(b) from the IJ in Wassily's case. In June 2020, the IJ denied Velasquez Arreaga's renewed application for asylum, as well as his applications for withholding of removal and relief under the CAT, and ordered him removed to Guatemala.

After an unsuccessful appeal to the BIA, Velasquez Arreaga filed a petition for review in this Court. While that petition for review was pending, the parties agreed to remand the case on the grounds that the BIA relied on since-abrogated

10

precedent in determining that Velasquez Arreaga's 2018 conviction was final for immigration purposes and for the agency to further consider whether Velasquez Arreaga's 2015 conviction was itself a particularly serious crime. After the New York Appellate Division, Second Department affirmed Velasquez Arreaga's 2018 conviction, *see People v. Velasquez-Arreaga*, 198 A.D.3d 933 (2d Dep't 2021), the parties stipulated that the conviction had become final and requested that the BIA issue a decision consistent with its prior order. The BIA obliged, and Velasquez Arreaga filed this petition for review.[6]

## DISCUSSION

We review the BIA's determinations of law *de novo*. *See Nwozuzu v. Holder*, 726 F.3d 323, 326 (2d Cir. 2013). In a case involving an agency's interpretation of a statute, we use the "traditional tools of statutory construction" to "resolve statutory ambiguities" and "determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024).[7]

---

[6] Although the BIA decided *Matter of T-C-A-* before it reissued its decision, the reissued decision did not rely on *Matter of T-C-A-* in rejecting Velasquez Arreaga's application for adjustment of status.

[7] Previously, we deferred to the BIA's reasonable interpretation of an ambiguous statute under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Nwozuzu*, 726 F.3d at 326–27. Although *Chevron*'s deferential review framework was

11

## I.     Statutory Framework

Asylum is a category of discretionary relief available to a noncitizen who qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A).   *See* 8 U.S.C. § 1158(b)(1)(A).  As relevant here, a "refugee" under 8 U.S.C. § 1101(a)(42)(A) is a "person who is outside any country of such person's nationality" who is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."   *Id.* § 1101(a)(42)(A).  A noncitizen "granted

overruled by *Loper Bright*, *Loper Bright* nevertheless acknowledged that "Congress has often enacted [] statutes" that authorize an agency "to exercise a degree of discretion." 603 U.S. at 394–95.  In those circumstances, a court must "recogniz[e] constitutional delegations, fix[] the boundaries of the delegated authority, and ensur[e] the agency has engaged in reasoned decisionmaking within those boundaries."  *Id.* at 395 (alteration adopted) (internal quotation marks and citations omitted).  Because we conclude that the plain text of 8 U.S.C. § 1159(b) allows only noncitizens with current asylum status to adjust to lawful permanent resident status, we do not reach the Government's argument that "[t]he immigration laws include such" discretionary statutes.  *Wassily v. Bondi*, No. 22-6247, Dkt. 70.1 at 2.

asylum under [8 U.S.C. § 1158(b)]" is protected from removal and allowed to work in the United States and to travel abroad with prior authorization. *Id.* § 1158(c)(1).

A grant of asylum does not, however, "convey a right to remain permanently in the United States." *Id.* § 1158(c)(2). Instead, "[a]sylum granted under [8 U.S.C. § 1158(b)] . . . may be terminated if the Attorney General determines" that a noncitizen, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." *Id.* § 1158(c)(2)(B), 1158(b)(2)(A)(ii).[8] If a noncitizen's "asylum granted under [8 U.S.C. § 1158(b)]" is terminated, the noncitizen is subject to removal from the United States. *See id.* § 1158(c)(2)–(3).

Once "granted asylum," a noncitizen may apply to adjust to lawful permanent resident status. Under 8 U.S.C. § 1159(b), the Secretary of Homeland Security or Attorney General "may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum" who applies for adjustment and meets certain requirements. *Id.* § 1159(b). Those

---

[8] In addition to providing that a grant of asylum may be terminated if a noncitizen is convicted of a particularly serious crime, 8 U.S.C. § 1158(c)(2) lists several other grounds on which a grant of asylum may be terminated. *See* 8 U.S.C. § 1158(c)(2)(A)–(E).

requirements include: the noncitizen must "ha[ve] been physically present in the United States for at least one year after being granted asylum"; "continue[] to be a refugee within the meaning of [8 U.S.C. § 1101(a)(42)(A)] or a spouse or child of such a refugee"; not be "firmly resettled in any foreign country"; and be admissible "as an immigrant . . . at the time of examination for adjustment" to lawful permanent resident status, except as provided by 8 U.S.C. § 1159(c). *Id.* § 1159(b)(1)–(5).

Under 8 U.S.C. § 1159(c), "the Secretary of Homeland Security or the Attorney General may waive" certain grounds of inadmissibility "with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest."[9]  *Id.* § 1159(c).  Thus, although a noncitizen

---

[9] Section 1159(c) operates in "[c]oordination with section 1182," 8 U.S.C. § 1159(c), which in turn lists a number of grounds on which a noncitizen may be deemed "ineligible to be admitted to the United States," *id.* § 1182(a).  Section 1159(c) specifically provides that certain inadmissibility grounds are inapplicable to noncitizens seeking adjustment to lawful permanent resident status, *see id.* § 1182(a)(4) (noncitizen likely to become a public charge); *id.* § 1182(a)(5) (employment-related qualifications); *id.* § 1182(a)(7)(A) (documentation requirements for immigrants), and that other grounds cannot be waived for noncitizen applicants, *see id.* § 1182(a)(2)(C) (involvement in controlled substance offenses); *id.* § 1182(a)(3)(A)–(C), (E) (certain national security and foreign policy considerations).  Because a noncitizen granted asylum "is not subject to admissibility grounds at the time of the asylum grant, the adjudication of the adjustment application

14

generally must be currently admissible when applying for adjustment to lawful permanent resident status, 8 U.S.C. § 1159(c) gives the Secretary of Homeland Security or the Attorney General some discretion to waive this requirement for a noncitizen seeking adjustment.

## II.     "Granted Asylum" Means Current Asylum Status

These petitions for review turn on the meaning of "the status of any alien granted asylum"—in particular, the word "granted."   Wassily and Velasquez Arreaga maintain that "granted" should be read as a past-tense verb.   That is, they argue that any noncitizen who has ever been "granted" asylum is eligible to adjust to lawful permanent resident status, even if the noncitizen's asylum status was subsequently terminated.   The Government reads "granted" as describing a

---

may be the first instance that inadmissibility grounds are considered."  7 USCIS Policy Manual, pt. m, ch. 3 (2025).

present condition, such that a noncitizen must currently be "granted asylum" to be eligible to adjust to lawful permanent resident status under 8 U.S.C. § 1159(b).

In our view, 8 U.S.C. § 1159(b) allows only noncitizens with current asylum status to adjust to lawful permanent resident status.[10]  As with any question of statutory interpretation, we start with the text.  *See Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023).

Section 1159(b) refers to "the status of an alien lawfully admitted for permanent residence" and "the status of any alien granted asylum."  8 U.S.C. § 1159(b).  We agree with the Fourth Circuit's observation in *Cela* that "the ordinary meaning of 'status' signals a present condition," 75 F.4th at 364—in particular, a legal condition.[11]  It would be odd to say that someone maintains the

---

[10] Because we independently conclude that 8 U.S.C. § 1159(b) precludes a noncitizen with terminated asylum status from adjusting to lawful permanent resident status, we reject Wassily's argument that the BIA impermissibly applied *Matter of T-C-A-* retroactively. *See generally Marquez v. Garland*, 13 F.4th 108, 111 (2d Cir. 2021) ("[J]udicial holdings interpret existing law and thus operate retroactively.").

[11] *See, e.g.*, *Status*, Webster's Third New International Dictionary (1981) ("[T]he condition (as arising out of age, sex, mental incapacity, crime, alienage, or public station) of a person that determines the nature of his legal personality, his legal capacities, and the nature of the legal relations to the state or to other persons into which he may enter."); *Status*, Black's Law Dictionary (5th ed. 1979) ("The legal relation of [an] individual to [the] rest of the community."); *Status*, Oxford English Dictionary, https://www.oed.com/dictionary/status_n?tab=meaning_and_use#20924305 (last visited Aug. 6, 2025) ("The fact

present legal condition of having once been granted asylum at some point in the past, even though that grant of asylum was later terminated. The more natural reading of "the status of any alien granted asylum" is that a noncitizen must presently be granted asylum to adjust to lawful permanent resident status under 8 U.S.C. § 1159(b).

In fact, if Congress intended to permit anyone previously granted asylum to become a lawful permanent resident, as the dissent suggests, there would be no need for Congress to use the word "status" at all. And we reject statutory constructions that would render a word "insignificant, if not wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Any lingering uncertainty about the meaning of "granted" in 8 U.S.C. § 1159(b) is settled by considering "nearby statutory provisions." *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 185 (2022). A closer—or even a cursory—look at the neighboring provision of 8 U.S.C. § 1158(c) confirms our reading of 8 U.S.C. § 1159(b). As noted above, 8 U.S.C. § 1158(c) provides that "an

---

or position of belonging to a group which is subject to certain legal rights or limitations; the legal classification corresponding to this; a person's legal condition with regard to freedom of movement or action, citizenship, the age of majority, etc.").

alien granted asylum under [8 U.S.C. § 1158(b)]" is protected from removal and permitted to work in the United States and travel abroad. *See* 8 U.S.C. § 1158(c)(1). But that section further provides that "[a]sylum granted under [8 U.S.C. § 1158(b)] . . . may be terminated," and that can then lead to the noncitizen's removal. *Id.* § 1158(c)(2)–(3).

Section 1158(c) consistently uses "granted" to refer to then-existing asylum status: first, to describe the benefits available to "an alien granted asylum," and second, to refer to the consequences of terminating that "[a]sylum granted."[12] Read in that context, section 1159(b)'s reference to "the status of any alien granted asylum" is best understood as simply extending another benefit to a noncitizen with current asylum status: the opportunity to adjust to lawful permanent resident status.[13] That reading also best reflects "the statutory scheme as a whole," *see*

---

[12] *See also, e.g.*, 8 U.S.C. § 1158(b)(3)(A) ("A spouse or child . . . of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien."); *id.* § 1158(b)(3)(B) ("An unmarried alien who seeks to accompany, or follow to join, a parent granted asylum under this subsection . . . .").

[13] In *Siwe v. Holder*, 742 F.3d 603 (5th Cir. 2014), the Fifth Circuit held that a noncitizen "whose asylum has been terminated[] is not prohibited from applying for adjustment of status" under 8 U.S.C. § 1159(b). 742 F.3d at 612. The Fifth Circuit did not, however, consider the language of 8 U.S.C. § 1159(b) in light of 8 U.S.C. § 1158(c). Accordingly, we decline to follow the Fifth Circuit's reading of 8 U.S.C. § 1159(b).

*Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 181 (2d Cir. 2024)—namely, a statutory framework that contemplates that a noncitizen claiming persecution in his or her country of nationality may first obtain a grant of asylum, then adjust to lawful permanent resident status, and ultimately apply for citizenship.

Wassily and Velasquez Arreaga nevertheless maintain that 8 U.S.C. § 1159(b) cannot require current asylum status because other, differently worded provisions in 8 U.S.C. § 1159 require a noncitizen to meet some other "present" qualification.   The dissent likewise maintains that 8 U.S.C. § 1159 "expressly includes continuing status requirements where applicable[] and [] does not apply one to individuals 'granted asylum.'"  Dissenting Op. at 1–2.

Besides assuming its conclusion—that the phrase "granted asylum" *does not* impose a continuing status requirement—the dissent's argument cannot overcome the clear meaning of the statutory text.  True, other parts of 8 U.S.C. § 1159 use varying language to require that a noncitizen seeking adjustment to lawful permanent resident status maintain some other current condition.[14]   Those

---

[14] *See* 8 U.S.C. § 1159(a)(1)(A) (noncitizen admitted as a refugee "whose admission has not been terminated" may adjust to lawful permanent resident status); *id.* § 1159(b)(3)

provisions—none of which speaks of a "granted" status—cast no doubt on what 8 U.S.C. § 1158 and § 1159 make clear:  "[G]ranted asylum" means current asylum status.  Indeed, for all its references to various other statutory provisions, the dissent barely acknowledges the text of 8 U.S.C. § 1158, except to dismiss it as a "breadcrumb[]."  *Id.* at 10.  If the dissent had some theory as to why the phrase "granted asylum" would mean one thing in 8 U.S.C. § 1158 but something entirely different in 8 U.S.C. § 1159, surely it would have said something more.

Wassily and Velasquez Arreaga similarly find no support in 8 U.S.C. § 1159(b)(2).  Although a noncitizen must "ha[ve] been physically present in the United States for at least one year after being granted asylum" to be eligible to adjust to lawful permanent resident status, *see* 8 U.S.C. § 1159(b)(2), the inclusion of "being" before "granted" in that provision clearly demonstrates that the use of "granted" in 8 U.S.C. § 1159(b)(2), unlike its use in the prefatory clause of 8 U.S.C. § 1159(b), refers to a completed event rather than a current status.

---

(noncitizen applying for adjustment must "continue[] to be a refugee within the meaning of [8 U.S.C. § 1101(a)(42)(A)] or a spouse or child of such a refugee"); *id.* § 1159(b)(5) (noncitizen applying for adjustment under 8 U.S.C. § 1159(b) must be admissible "at the time of examination for adjustment").

20

The statutory waiver provision of 8 U.S.C. § 1159(c) gets Wassily and Velasquez Arreaga no further. Section 1159(c) provides that the Secretary of Homeland Security or the Attorney General, in granting lawful permanent resident status, may waive the requirement of admissibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." *Id.* § 1159(c). Wassily and Velasquez Arreaga maintain that because the grounds for termination of asylum and inadmissibility "substantially overlap," *see, e.g.,* Velasquez Arreaga Reply Br. at 22, categorically barring noncitizens with terminated asylum status from applying for adjustment of status would limit the Secretary's or Attorney General's discretionary waiver authority under 8 U.S.C. § 1159(c). Similarly, the dissent contends that its reading of 8 U.S.C. § 1159(b) "best preserves" the discretionary waiver authority of 8 U.S.C. § 1159(c). Dissenting Op. at 13.

Wassily and Velasquez Arreaga concede, however, that the grounds for inadmissibility and the grounds for termination of asylum status are not coextensive. Moreover, the BIA has held that an IJ can defer ruling on a motion to terminate a noncitizen's asylum status pending an application for adjustment

21

under 8 U.S.C. § 1159(b).  *See Matter of K-A-*, 23 I. & N. Dec. 661, 665 (B.I.A. 2004).
In other words, even though current asylum status is required to adjust under 8
U.S.C. § 1159(b), section 1159(c) continues to vest the Secretary or Attorney
General with discretion to waive the admissibility requirement, including in cases
when an IJ defers ruling on a motion to terminate asylum status in favor of first
adjudicating an application for adjustment of status.  We are not free to alter the
plain meaning of 8 U.S.C. § 1159(b) based on the nebulous idea that some greater
degree of waiver authority under 8 U.S.C. § 1159(c) would be preferable as a matter
of policy—a request better addressed to Congress.

Finally, this reading of 8 U.S.C. § 1159(b) is buttressed by the Immigration
Act of 1990.  The Immigration Act of 1990 added a statutory note to 8 U.S.C. § 1159,
titled "Adjustment of Certain Former Asylees," which provides that the
adjustment provision of 8 U.S.C. § 1159(b) "shall also apply to an alien[] . . . who
was granted asylum before the date of the enactment of this Act (*regardless of
whether or not such asylum has been terminated* under section 208(b) of the
Immigration and Nationality Act)" and "who is no longer a refugee because of a
change in circumstances in a foreign state."  Pub. L. No. 101–649, § 104(d), 104 Stat.

22

4978, 4985 (1990) (emphasis added).[15]  That is, the statutory note specifically allowed certain noncitizens to apply for adjustment of status under 8 U.S.C. § 1159(b), "regardless of whether or not" their asylum status had been "terminated under [8 U.S.C. § 1158(b)]."  *Id.*  Congress's express articulation of this exception suggests that 8 U.S.C. § 1159(b) does not, as a general matter, allow noncitizens whose asylum status has been terminated to adjust to lawful permanent resident status.  *See generally Nwozuzu*, 726 F.3d at 327 ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987))).  Otherwise, that note would have unnecessarily repeated what remained silently true under 8 U.S.C. § 1159(b).

---

[15] The legislative record of the Immigration Act of 1990 reflects legislators' concerns that then-recent political regime changes in foreign countries might prevent noncitizens who were granted asylum from adjusting to lawful permanent resident status.  *See, e.g.*, 136 Cong. Rec. 27133 (1990) (statement of Rep. Dan Rostenkowski) ("It is incongruous that the otherwise welcome demise of a repressive regime in an asylee's home country should make it virtually impossible for the asylee to remain in the United States for failure to prove a continuing well-founded fear of persecution.  Yet, under current law, this change in circumstances in the homeland permits the [Immigration and Naturalization Service] to deny adjustment to permanent resident status, to terminate asylee status, and to initiate deportation proceedings.").

At bottom, Velasquez Arreaga, Wassily, and the dissent all advance an interpretation of 8 U.S.C. § 1159(b) that makes little sense: A noncitizen convicted of a particularly serious crime, and whose asylum status was terminated as a result, would categorically be treated the same as a noncitizen with current asylum status when applying to adjust to lawful permanent resident status. The termination of the noncitizen's asylum status would simply be irrelevant. It would be one thing if this peculiar result were required by the statute. Unsurprisingly, though, such a counterintuitive interpretation of the statutory scheme can be reached only by disregarding the clear meaning of the statutory text.

For these reasons, 8 U.S.C. § 1159(b)'s reference to "the status of any alien granted asylum" must be read consistently with 8 U.S.C. § 1158(c)'s references to "an alien granted asylum" and "[a]sylum granted under [8 U.S.C. § 1158(b)]." In each case, asylum "granted" refers to current asylum status. Because Wassily's and Velasquez Arreaga's asylum status was terminated, they were not eligible to adjust to lawful permanent resident status under 8 U.S.C. § 1159(b).

## CONCLUSION

For the reasons set forth above, we **DENY** the petitions for review.

24